[No. 7673.]

LIBERTY BELL GOLD MINING COMPANY v. MOORHEAD MIN-
ING AND MILLING COMPANY.

DAMAGES—*Trespass to Metalliferous Mines.* In the case of an innocent trespass, and the subtraction of ore from a metalliferous mine, the measure of damages is the gross value of the ore before disturbance; not the net product or gross proceeds. Where the trespass is wilfull, and the wrong-doer has milled the ore, or sold it, the plaintiff recovers the gross proceeds realized, without any deduction for the increased value which the trespasser has created by his efforts.

*Error to San Miguel District Court.*—Hon. SPRIGG SHACKLEFORD, Judge.

Messrs. MACBETH & MAY, for plaintiff in error.

Mr. H. M. HOGG, Mr. W. L. HOGG and Mr. E. B. ADAMS, for defendant in error.

Mr. JUSTICE GARRIGUES delivered the opinion of the court:

1. The Moorhead Mining and Milling Company, plaintiff below, defendant in error, owns the Franklin lode mining location situated in Upper San Miguel mining district, and the Liberty Bell Gold Mining Company, defendant below, plaintiff in error, owns the Lucky Boy, Tariff, Overlook, Ione and Winner lode mining locations, all joining the Franklin. A main vein, called the Liberty Bell vein, traverses the mountain, on the strike for miles, in an easterly and westerly direction. Two secondary veins to the main vein apex upon the Franklin, called by defendant the S. Hanging Wall and the Winner veins, and by plaintiff, Franklin No. 1 and the Waters veins. The dip of all these veins is southerly, and on the dip they pass under and through the Franklin and extend far

beyond the plane of its southerly side line, and unite with the main vein, forming but one vein beyond the junction. The Moorhead Company brought this action at Telluride against the Liberty Bell, to recover damages for underground trespass by the latter upon the Franklin by driving beneath its surface underground workings into its territory and mining and removing ore from beneath the Franklin surface; also from veins apexing upon its surface, after they pass on the dip outside of and beyond the southerly sideline of the Franklin extended downward vertically, and to enjoin further trespassing. The controversy turned upon whether the veins apexed upon Franklin or Liberty Bell territory. In the early stages of the litigation each party claimed the apexes of all these veins upon its territory, and extralateral rights; that is, the right to follow the veins on the dip, under and through the Franklin surface, and beyond its vertical southerly sideline. Since the finding of the lower court, they abandon this position. The court found the main vein apexed upon Liberty Bell territory, and the result or effect of the decree was to award this vein to defendant with extra-lateral rights. It found the secondary veins apexed on the Franklin and awarded plaintiff these veins with extra-lateral rights down to the junction or union with the main vein. It refused to grant an injunction against the Liberty Bell from working the main vein under, through and beyond the Franklin, but granted an injunction restraining defendant from working the two minor veins from their apexes down to their junction with the main vein. With the injunctive decree, both parties express themselves here as content. Defendant admits the decree allows it to work all the ground to which it is entitled, viz.: all the main vein and extra-lateral rights thereon; that plaintiff owns the secondary veins on which defendant trespassed and mined,

removed and milled ores therefrom and sold the finished product, all the proceeds of which it appropriated to its own use; it takes no issue with the decree enjoining de-defendant from further trespassing upon these secondary veins; and plaintiff abandons its original claim of ownership to the main vein. These concession and admission in the briefs and oral argument render it unnecessary to consider but two assignments of error: First, did the court refuse to properly instruct the jury upon the measure of damages for willful trespass? Second, the court erred in failing to confine and restrict the jury in awarding damages, to the two secondary veins; but permitted them to roam over the whole case unrestricted, and the jury may have based some damages upon ore removed from the main vein.

2.  Defendant admits plaintiff owned the secondary veins upon which it trespassed for over three years and removed large bodies of ore which it milled, and sold the finished product and applied all the proceeds to its own use. The only excuse it now offers for the trespass is that a great portion of the ore was taken innocently with an honest mistake of plaintiff's right thereto; that the apexes of the veins were buried under a deep wash and their location could only be calculated; that in its deep mining beneath the surface, defendant made a mistake in calculating the location of the tops of the veins, which, as soon as it ascertained, it ceased mining thereon except that in cleaning up, about 300 tons of ore was removed from the Winner vein after the mistake was discovered.

3.  In case of innocent trespass by mining and milling metalliferous ores, where the trespasser sells the finished product and applies the proceeds to his own use, the owner should be reimbursed for his actual loss and his damages are compensatory only. The measure of

damages is the gross value of the ore in place before it was disturbed, not the net product or gross proceeds. The damages may be ascertained by deducting from the enhanced value or gross proceeds, the cost of making the product at the time of conversion. It was agreed on the trial in this case, where the trespass was innocent, the deduction should be $4.64 per ton.

4. The court in effect told the jury in willful trespass the measure of damages was the enhanced value or gross proceeds realized from the ore at the time of the conversion with no deductions; that is, the owner could recover the full amount realized by defendant from the ore at the time of conversion without deductions for any cost in making the finished product from the raw material; that in willful trespass of this kind, the defendant should be at the expense of mining and milling the ore for the benefit of the owner. This is complained of as error. Defendant admits in willful trespass, it was entitled to no deductions for the cost of mining and bringing the ore to the mouth of the mine, but claims it was entitled to deductions thereafter for milling and transportation charges; in other words, that the conversion took place at the mouth of the mine and not at the time it applied the gross proceeds or finished product to its own use. This contention has lately been decided adversely to defendant by the United States Circuit Court of Appeals.—*Liberty Bell Co. v. Smuggler Co.*, 122 U. S. C. C. A. 113.

Defendant's contention is based upon cases of trespass upon coal veins, where the conversion usually takes place at the collar of the shaft, and hence are not applicable here. In case of willful trespass upon metalliferous veins, where the trespasser has mined, milled and sold a finished or enhanced product, the conversion takes place when he applies the proceeds to his own use, and

the measure of damages is the enhanced value or gross proceeds realized from the ore without deductions on account of any value the trespasser may have bestowed upon the ore by his labor.

5. The jury returned a general verdict for $46,072.50. No special finding was made or requested. Complaint is now made that the jury may have based some of its damages on ore taken from the main vein, which the court found belonged to defendant. Plaintiff's evidence of ore taken from the S. Hanging Wall vein, was 5445 tons of the value of $74,324.25; from the Winner vein 12220 tons of the value of $83,707.00, making a total tonnage from these two veins of 17665 tons, and a total value of $158,029.00. Allowing from this the agreed deduction of $4.64 per ton, it leaves as the net value of the finished product, according to plaintiff's minimum values, $76,165.65. Defendant's testimony showed an admitted trespass on the two veins of 2842 tons of the value of $15,996.00, and the average between plaintiff's minimum and defendant's maximum values gives $46,035.08, or within $35.00 of the verdict. Plaintiff claimed in its complaint a tonnage in excess of 100,000 tons and a damage of over $500,000.00, and if the jury had based its verdict on the main vein, it would seem they must have found much larger damages than they did. From defendant's own testimony, had they allowed damages on the main vein, the verdict would have been $138,727.36. The court found the trespass was on the secondary veins owned by plaintiff, and not on the main vein owned by defendant; it instructed the jury that each party to the action was entitled to all the veins, throughout their entire depth, the top or apex of which lay inside the surface lines of the location extended downward vertically, although such veins so far departed from a perpendicular in their downward course as to

extend outside the vertical sideline of the claim. It adopted the finding of the jury and entered judgment on the verdict which it refused to set aside, showing that the court and jury were in accord as to the damages and the court considered that the jury limited the damages to the same veins upon which it granted the injunction.

We are of the opinion plaintiff recovered damages for trespass and conversion upon the secondary veins only. Judgment affirmed.

*Affirmed.*

Decision *en banc.*